IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEROISE J. WASHINGTON, Rev., D.D., | ) ) ) | |
| Petitioner, | ) ) | 4:07CV3125 |
| v. | ) ) ) | |
| ROBERT HOUSTON, Director, State of Nebraska Department of Correctional Services, | ) ) ) ) | **MEMORANDUM AND ORDER** |
| Respondent. | ) ) | |

This is a habeas corpus case. After considering the state court records and the briefs of the parties, I will dismiss the petition with prejudice because the claims have been procedurally defaulted or because they lack merit.

## I.  BACKGROUND

Despite a lengthy criminal record, and the failure to graduate high school, the petitioner claims to be a minister holding a doctorate of divinity degree. For purposes of this case, I need not decide the truth of that claim. Indeed, I only mention these assertions because the petitioner insists upon using "Rev." and "D.D." in his filings (*see*, *e.g.*, filing 30 at CM/ECF pp. 1 and 5) and a clarification therefore seems to be in order. With that said, I turn next to the more relevant background.

### *State Proceedings*

On January 19, 2005, the petitioner pled no contest to attempted theft by unlawful taking in the District Court of Douglas County, Nebraska, pursuant to a plea

agreement with the State. (Filing 20, Attachment 2[1], at CM/ECF pp. 4-5, 8.)[2] Under the terms of the plea agreement, the State reduced the charge of theft by unlawful taking to attempted theft by unlawful taking and agreed not to charge the petitioner as a habitual criminal. (Filing 20, Attachment 2, at CM/ECF pp. 12-13.) The factual basis given by the State, and expressly agreed to by the petitioner, established that on or about January 23, 2004, the petitioner took Toni Gulizia's vehicle without permission and refused to return the vehicle at Gulizia's request. (Filing 20, Attachment 2, at CM/ECF pp. 17-18.) The vehicle was found abandoned approximately two weeks later. (Filing 20, Attachment 2, at CM/ECF p. 18.)

Among other things,[3] the judge told the petitioner that the maximum prison sentence was 5 years and the petitioner said he understood. (Filing 20, Attachment 2, at CM/ECF p. 11.) After that, the petitioner told the judge that except for the express provisions of the plea agreement–reducing the charge and agreeing not to seek the habitual offender designation–no other promises had been made to him. That colloquy went like this:

> THE COURT: Okay. Mr. Washington, has anyone told you or led you to believe that, if you entered a plea of no contest this morning, you would receive probation or be given a light sentence or in any way rewarded for pleading no contest?

---

[1]The reference to the "Attachment" number is to the CM/ECF document number. That number may not correspond with the number assigned to the document by the respondent.

[2]The entire state court record may be found at filing 20 and filing 22. The presentence report appears at filing 27.

[3]The plea-taking proceeding was thorough. It fully complied with all the federal constitutional requirements. Thus, I discuss only those portions of the proceedings that are especially relevant to the petitioner's claims.

> THE DEFENDANT: No, sir.
>
> THE COURT: And, Mr. Washington, has anybody made any threats or any promises or any inducements of any kind in order to obtain your plea of no contest this morning?
>
> THE DEFENDANT: No, sir.

(Filing 20, Attachment 2, at CM/ECF p. 13.)

The judge then carefully questioned the petitioner about whether he was satisfied with his lawyer. Not only was he satisfied, the petitioner gave his lawyer a ringing endorsement:

> THE COURT: Have you had enough time to discuss this case with your attorney before our hearing today?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you talked with your attorney about all the facts and circumstances surrounding this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: About all the defenses that you might have to this charge?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anything about this charge and the facts and circumstances surrounding it that you haven't talked to your attorney about that you still want to talk to her about before we go any further?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you satisfied with Miss Kessell as your attorney?

-3-

> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you think she's done a good job for you?
>
> THE DEFENDANT: As always, yes, Your Honor.
>
> MS. KESSELL: My day just got better.
>
> (Filing 20, Attachment 2, at CM/ECF pp. 14-15.)

This exchange is pertinent to the petitioner's federal claim that his lawyer had a conflict of interest. That claim of a conflict of interest is predicated upon a few stray statements that counsel allegedly made long before the above quoted exchange took place. According to the petitioner, "[d]uring the [p]reliminary [h]earing proceedings, she, Cheryl Kessell, informed the Court [that] the 'victim's' brothers were her Church Members and were great people." (Filing 1, at CM/ECF p. 9.)

An extensive presentence report was prepared. (Filing 27, at CM/ECF pp. 1-46.) Among other things, that report detailed the petitioner's lengthy prior criminal record which included a 1988 state felony conviction for assault upon a law enforcement officer and a 1992 federal felony conviction for being a felon in possession of firearm. (Filing 27, at CM/ECF pp. 3-4.)

The probation officer took care to denote what sentences were for felonies by using an asterisk (*). (Filing 27, at CM/ECF p. 3.) If the asterisk did not appear next to the criminal history description, then the conviction was *not* considered a felony. The 1998 "credit card" convictions (forming the basis of one of the petitioner's federal claims) are not presented as felonies and do not contain asterisks indicating the felony designation. (Filing 27, at CM/ECF p. 5.)

-4-

The probation officer indicated that the petitioner did not believe he had a substance abuse problem (filing 27, at CM/ECF p. 17) despite the fact that the petitioner had given a handwritten statement to the probation officer admitting that "I was under the influence of drugs & alcohol and thoughtlessly took plaintiff's [sic] automobile to further my alcohol and drug indulgences." (Filing 27, at CM/ECF p. 15.) Noting that the petitioner had repeatedly violated federal supervision restrictions while abusing drugs, the probation officer did not recommend probation. (Filing 27, at CM/ECF p. 17.)

The state district court sentenced the petitioner to twenty to sixty months imprisonment. (Filing 20, Attachment 2, at CM/ECF p. 27.) Both the judge and the petitioner's defense counsel indicated that they had reviewed the presentence report. (Filing 20, Attachment 2, at CM/ECF pp. 21-22, 27.) In fact, when given the opportunity to supplement the report, defense counsel gave the judge additional information about the defendant's cooperation with law enforcement officials regarding extradition issues and the fact that an Iowa charge had been dismissed. (Filing 20, Attachment 2, at CM/ECF pp. 22-23.)

Despite a brief by trial counsel claiming that the petitioner's sentence was excessive (filing 20, attachment 3, at CM/ECF pp. 1-11), the petitioner's conviction and sentence were affirmed on direct appeal by the Nebraska Court of Appeals. The court sustained the State's motion requesting that it summarily affirm. (Filing 20, Attachment 8, at CM/ECF p. 2.) The petitioner did not file a petition for further review to the Nebraska Supreme Court. (Filing 20, Attachment 8, at CM/ECF pp. 1-2.) The mandate of the Nebraska Supreme Court was issued on December 16, 2005. (Filing 20, Attachment 8, at CM/ECF p. 2.)

On October 11, 2006, the petitioner, proceeding pro se, filed a motion for post-conviction relief in state district court under Nebraska's Postconviction Relief Act. (Filing 20, Attachment 11, at CM/ECF pp. 11-15.) Summarized and condensed for

clarity and to avoid redundancy, the petitioner made the following four arguments: (1) his lawyer was ineffective because she knew the "Gulizia Brothers" as members of her church, she thought they were "great people" and therefore the lawyer had a conflict of interest (filing 20, Attachment 11, at CM/ECF p. 12); (2) counsel was ineffective because she did not review the presentence report with the petitioner and instead represented that there was nothing out of the ordinary and that the probation office was recommending probation (filing 20, Attachment 11, at CM/ECF p. 12); (3) concerning the errors the petitioner found in the presentence report, defense counsel was ineffective because she failed to file the appropriate motions after the petitioner was incarcerated and had informed counsel of the errors (filing 20, Attachment 11, at CM/ECF pp. 13, 17); (4) the presentence report erroneously stated that the petitioner had been found guilty of a felony in 1998 when in fact the charge was reduced to a misdemeanor (filing 20, Attachment 11, at CM/ECF p. 13) and the presentence report wrongly stated that the petitioner was in a "bad way with drugs . . . ." (Filing 20, Attachment 11, at CM/ECF p. 14.)

The state district court denied the petitioner's motion for post-conviction relief without an evidentiary hearing. In a brief order, the court found that the petitioner failed to allege facts, which if proved, constituted a denial or violation of his rights under the United States or Nebraska Constitutions. (Filing 20, Attachment 11, at CM/ECF p. 18.) The petitioner appealed.

In support of his appeal, the petitioner submitted a pro se brief to the Nebraska Court of Appeals. (Filing 20, Attachment 5, at CM/ECF pp. 1-19.) He made the following three assignments of error:

>    I.   The sentence imposed by the District Court was the maximum allowed under the statute; the sentence was excessive and as such, was an abuse of discretion.

-6-

II. The District Court erred in not finding the Defense Counselor, Cheryl Kessell, to be ineffective as Counsel and presenting a conflict of interest.

III. The District Court erred by failing to correct false information in the Appellant's criminal record and Pre-Sentence Investigation Report (hereinafter PSI) once it became aware of the discrepancies.

(Filing 20, Attachment 5, at CM/ECF p. 4.)

The petitioner did not prevail on appeal. On March 14, 2007, the Nebraska Court of Appeals summarily affirmed the district court's denial of post-conviction relief, and the Nebraska Supreme Court subsequently overruled the petitioner's petition for further review. (Filing 20, Attachment 10, at CM/ECF p. 2.)

### *Federal Proceedings*

The petitioner filed his petition in this court on May 3, 2007. (Filing 1.) After initial review, I found that the petitioner presented the following potentially cognizable claims:

Claim One: The petitioner's conviction was obtained by plea of guilty (or no contest) which was unlawfully induced or not made voluntarily with an understanding of the nature of the charge and the consequences of the plea *because* petitioner entered into a verbal plea agreement for a "reduced charge" based on defense counsel's wrongful assurance that the presentence report, and the prosecution, had or would recommend probation but a prison sentence was ultimately imposed.

-7-

> Claim Two: The petitioner's conviction was obtained as a result of ineffective assistance of counsel *because* petitioner's trial counsel had a "conflict of interest" arising out of her relationship with the "'victim's' family."
>
> Claim Three: The petitioner was denied a right to direct appeal *because* counsel did not include an allegation in the direct appeal regarding an erroneous presentence investigation report *and because* the Nebraska courts did not give the petitioner access to the erroneous presentence report while he was appealing or seeking post-conviction relief.
>
> Claim Four: The petitioner was denied due process of law *because* the district court did not afford him the opportunity to review the presentence report before or after sentencing *and because* the Nebraska courts failed to allow the petitioner or his counsel access to the report while he was appealing or seeking post-conviction relief.

(Filing 11.)

The respondent answered (filing 21) and filed the relevant records. The parties were directed to brief this case and they did. (Filings 29, 30 and 31.) The matter became ripe for decision on or about December 28, 2007.

## *II. ANALYSIS*

In concise and well-reasoned briefs, counsel for the respondent argues that the petitioner's claims, while timely, are procedurally defaulted and without merit. (Filings 29 and 31.) With minor exceptions, I agree with counsel.

### *Some Relevant General Principles*

\*        As for the standard of review, when a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). Sometimes, however, it will be difficult to determine what the state courts did and therefore difficult to determine what standard of review is appropriate. *See, e.g.*, *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005). In those circumstances, a court may choose "to avoid entanglement" with state procedural questions, and apply a de novo standard of review. *Id.* That is particularly so where a "claim is doomed to failure whether we apply a de novo standard or follow AEDPA's mandate." *Id.*

\*        In general, a habeas petitioner must first fairly present each claim he or she wishes to litigate in federal court to the state courts. 28 U.S.C. § 2254(b)(1). *See also Anderson v. Harless*, 459 U.S. 4, 6, (1982) (A claim is properly presented when the state courts are given a " 'fair opportunity' to apply controlling legal principles to the facts bearing upon [the claim].") (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)).

\*        In Nebraska, a "fair opportunity" ordinarily means that each habeas claim must be presented to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Nebraska Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005) (Nebraska law required habeas petitioner to file a petition for further review with the Nebraska Supreme Court in order to exhaust his available state court remedies after his conviction was affirmed by the Nebraska Court of Appeals; state rules indicated that such a procedure was considered the ordinary process because mandate could not issue until the 30-day period for filing such a petition had lapsed) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (requiring a petitioner to exhaust one complete

round of the State's established appellate review process)); *Akins v. Kenney*, 533 F.Supp. 2d 935, 947 (D. Neb. 2008).

\* Under Nebraska law, a "motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *State v. Lotter*, 664 N.W.2d 892, 911 (Neb. 2003). *See also Akins*, 410 F.3d at 455-56 n. 1. In addition, as a general rule, Nebraska courts "will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion. The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Moore*, 718 N.W.2d 537, 542 (Neb. 2006) (death penalty case holding that constitutional challenge to statutorily mandated method of execution was procedurally barred) (internal citation omitted), *cert. denied*, 127 S. Ct. 1134 (2007).

\* If a petitioner fails to "fairly present" his claim to the state courts, and he can no longer present the claim to the state courts because, for example, a state court rule prohibits serial litigation, then the federal court will be precluded from considering the claim unless the petitioner fits into one of two exceptions. *See*, *e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir.2006), *cert. denied*, 127 S. Ct. 2256 (2007). That is, the petitioner must demonstrate "cause and prejudice" or a "miscarriage of justice" (like "actual innocence") in order to prosecute a claim when that claim has not been, and cannot be, fully and fairly asserted in the state courts. *Id.*

\* As for resolution of the merits of a claim in federal court, no evidentiary hearing is necessary when the claim may be resolved as a matter of law based either on undisputed facts or on the applicant's version of the facts, taken as true. *See*, *e.g.*, *Johnston v. Luebbers*, 288 F.3d 1048, 1059 (8th Cir.2002) (district court did not abuse its discretion in denying habeas corpus petitioner's request for an evidentiary

hearing on claim that his counsel was ineffective where record already contained facts necessary to resolve the claim).

\*      Even when there is a procedural question presented, a court may alternatively reach the merits where the record is adequate to do so. *See*, *e.g.*, *Winfield*, 460 F.3d at 1038 (where the record before the court, which included the original transcripts, the record of the state court's evidentiary hearing, the petitioner's habeas petition, and numerous briefs, presented adequate information upon which to base a decision on the merits of the petitioner's ineffective assistance of counsel claim, a court may alternatively consider the merits of the petitioner's claim rather than concentrating only on procedural questions); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.") (en banc). Indeed, 28 U.S.C. § 2254(b)(2) provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

\*      Where a lawyer does not represent more than one defendant, in order to prevail on a conflict of interest claim, a habeas petitioner must prove that (1) there was a plausible alternative strategy or tactic that defense counsel might have pursued that was objectively reasonable; (2) rather than representing his or her client, the alleged conflict of interest caused the attorney not to pursue the alternative strategy or tactic; and (3) there was an actual and demonstrable adverse effect to the petitioner in not pursing the alternative strategy or tactic. *Winfield*, 460 F.3d at 1039.

### *The Petitioner's Claims*

Because they are flimsy, I need not spend much time explaining why the petitioner's claims will be denied. It is sufficient to state the following.

Regarding the first federal claim (that his plea was involuntary because he had been promised probation), this assertion is both procedurally defaulted and without merit. The petitioner never fairly presented that argument to the Nebraska courts. He can no longer return to the state courts to do so. As a result, the first claim is procedurally defaulted under federal law. Furthermore, none of the pertinent excuses for disregarding procedural default have been shown to exist.

In addition, it is clear that the first claim is without substantive merit. For example, the petitioner told the sentencing judge that he had not been promised probation. Petitioner has failed to explain why he told the sentencing judge one thing, and now claims something else. To be blunt, it is impossible to believe that the petitioner, who could have easily and justifiably been charged as a habitual offender, reasonably expected probation for the offense of conviction.

Regarding the second federal claim (that his trial counsel was ineffective because his counsel had a conflict of interest), I find and conclude that the petitioner fairly presented that claim to the state courts and that it is not procedurally defaulted. However, that claim is plainly without merit.

Initially, assuming that defense counsel knew the victim's brothers and thought highly of them, those facts, even if true, fail to establish the three requirements necessary to prevail on a conflict of interest claim of this type. In addition, the petitioner was aware of counsel's alleged relationship with the victim's brothers long before the petitioner entered his plea. Despite this knowledge, the petitioner told the sentencing judge that he believed his lawyer had done a good job (as, indeed, she had). Once again, the petitioner fails to explain his contradictory positions and that inconsistency drives another stake through the heart of his conflict argument.

Regarding the third federal claim (that the petitioner was denied the right to a direct appeal as a result of his counsel's failure to question the use of a flawed

presentence report and because Nebraska failed to give the petitioner access to the presentence report), that assertion is procedurally defaulted since it was never fairly presented to the state courts. Moreover, the petitioner's failure to fairly present his claim has not been excused.

Still further, because the factual predicate for the claim is missing, this third claim has no merit. Despite his unfounded assertions, the presentence report did not contain the two errors mentioned by the petitioner in his state post-conviction case. That is, the probation officer did not describe the 1998 convictions as felonies and the petitioner clearly had a drug problem as evidenced by the petitioner's written admission to the probation officer.

Finally, the fourth federal claim (that the petitioner was denied due process because neither the petitioner or his lawyer were given access to the presentence report) is procedurally defaulted and without merit. The petitioner failed to fairly present this claim to the Nebraska courts, and he has not excused that failure.

The claim is also without merit because the petitioner's lawyer had access to, and in fact clarified and supplemented, the presentence report. Moreover, as explained above, the presentence report did not contain the errors assigned by the petitioner. As a result, he suffered no harm.

IT IS ORDERED that the petitioner's petition for a writ of habeas corpus (filing 1) is denied with prejudice. A separate judgment will be issued.

May 2, 2008.                    BY THE COURT:

                                *s/Richard G. Kopf*
                                United States District Judge